```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


DORNELL WIGFALL,                  )
                                  )
        Plaintiff,                )
                                  )
        v.                        )     CIVIL ACTION NO.
                                  )     00-12274-DPW
ROBERT SHEA,                      )
LARRY MARSHALL,                   )
SHAUN DEWEY,                      )
                                  )
        Defendants.               )
```

MEMORANDUM AND ORDER
OF
FINDINGS OF FACT
AND
<u>CONCLUSIONS OF LAW</u>
August 12, 2024

The late Plaintiff, Dornell Wigfall, pursued this prisoner's civil rights case *pro se*, alleging that certain individual defendants violated his Eighth Amendment right to be free from cruel and unusual punishment in connection with his removal from a cell at Souza-Baranowski Correctional Center on February 11, 1999.

By way of this Memorandum, providing an explanation specifically regarding disposition of claims against the last remaining defendants, I provide my general conclusion that Mr. Wigfall did not demonstrate by a preponderance of the evidence a violation of his Eighth Amendment rights by any served defendant.

The following constitute my findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52 together with associated observations relative to my orders of dismissal of the other defendants before the jury waived trial of the remaining three defendants. Final Judgment will enter accordingly and the case will be closed.

## I.

Following a bench trial, "the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a)(1). "[W]hen facts are in dispute the court weighs the evidence and makes findings of credibility." *Woodman* v. *United States*, 602 F. Supp. 3d 265, 271 (D.N.H. 2022), *appeal dismissed,* No. 22-1553, 2022 WL 18401460 (1st Cir. Dec. 6, 2022); "[c]redibility calls are for the trier." *Sawyer Bros., Inc.* v. *Island Transporter, LLC*, 887 F.3d 23, 31 (1st Cir. 2018) (quoting *Carr* v. *PMS Fishing Corp.*, 191 F.3d 1, 7 (1st Cir. 1999)).

As trier of fact, I "need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." *Reich* v. *Newspapers of New England, Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995) (citation omitted). The process of review and reconsideration of the record following Mr. Wigfall's passing, as a predicate for

issuance of a final judgment in this case, fully satisfies me that no other outcome than a judgment for defendants is supportable.  I chose to elaborate certain details and offer further particularization of facts relating to preceding motion practice to explain why this is so.

## II.

On February 11, 1999, Mr. Wigfall was a convicted prisoner in custody of the Massachusetts Department of Corrections in the Special Management Unit ("SMU") at the newly commissioned Souza-Baranowski Correctional Center facility ("Souza-Baranowski").

On February 10 and 11, 1999, Corrections Commissioner Michael Maloney authorized an institution-wide search, a procedure referred to as a "shakedown" by the parties in this matter.  Each cell in the institution was to be searched for weapons and contraband.  Deputy Commissioner Ronald Duval was put in charge of the search.

Prison policy mandated that officers conduct a strip search prior to searching each cell during such an event.  The prisoner was required to remove his clothing and pass it out the food tray slot.  Under prison policy, after officers checked the clothing for contraband, they were to return it to the prisoner so that he could re-dress.  Pursuant to prison policy, officers would handcuff the prisoner and he was to exit his cell while it was searched.

"The resolution of factual disputes in a case such as this often turns on assessing the reliability of competing and conflicting testimony from the interested parties." *Werner* v. *Therien*, No. CIV.A. 99-12497-GAO, 2005 WL 1000010, at *6 (D. Mass. Mar. 31, 2005). Under the circumstances, I have "a substantial reason to suspect that the parties **all** have a substantial motive to shade the truth or even flatly fabricate to support their respective positions." *Id.* (emphasis added). Approaching the parties' self-interested testimony warily in this case has seemed prudent.

As will appear below, I find it is the testimony addressed in support of Mr. Wigfall's position that is the less reliable. Because it is Mr. Wigfall's "burden to prove the facts necessary to support his claims by a preponderance of the evidence. . . . he must prove that it is more likely than not that the events occurred as he and his witnesses described them." *Id.* I find the evidence, as submitted during the travel of this case, does not even approximate to 50/50 in support of Mr. Wigfall's position.

Mr. Wigfall initially refused to comply with orders to come to the door of his cell and allow himself to be handcuffed (or in other words, he refused to "cuff up"). After he refused, members of the team told Deputy Commissioner Duval that Mr. Wigfall would not comply. Deputy Commissioner Duval reviewed

the circumstances and authorized an order for use of force as to Mr. Wigfall, who was known to be an aggressive individual trained and skilled in the martial arts.

Members of the Special Operations Unit implemented the order. Sergeant Larry Marshall, a member of the team assigned to searching Mr. Wigfall's cell, returned to Mr. Wigfall's cell to tell him that if he did not comply with the order to cuff up, chemical agents would be used to remove him from the cell forcibly. Although Mr. Wigfall was given several orders to cuff up, he still refused. At that point, Sergeant Marshall, who was certified to use chemical agents, administered two one-second blasts of the chemical agent over the top of the door, as was standard procedure in such circumstance.

While Mr. Wigfall testified that he saw Sergeant Marshall empty the entire can of chemical agent into his cell, I do not find this testimony credible. If Sergeant Marshall used an entire can of chemical agent, it would have suffused the site so thoroughly it would have affected anybody in that general area. In particular, Sergeant Marshall himself would have required a gas mask. Yet there is no evidence Sergeant Marshall needed or used a gas mask during the incident, nor is there any evidence that other inmates or prison employees nearby were affected by contaminant, as would have been the case if the entire can were used. Mr. Wigfall has failed to establish by a preponderance of

5

the evidence that Sergeant Marshall sprayed more than two one-second bursts into his cell.

Although Mr. Wigfall testified that Lieutenant Shea and Director Dewey were present during the use of chemical agent, he has not presented credible evidence that either defendant was actively involved in spraying his cell.

Mr. Wigfall testified, that after Sergeant Marshall sprayed the site, he was dragged out of the cell and thrown to the ground. He testified that his face was "slammed" to the ground, by someone other than one of the identified defendants, leaving an identifiable injury over his eye.

Mr. Wigfall did not present credible evidence that the defendants now remaining before me were involved in his move from the cell. Sergeant Marshall testified that after he sprayed the chemical agent, the move team took over to execute the extraction. I find that typical policy was followed regarding Mr. Wigfall such that the search and move teams remained separate during his extraction on February 11, 1999. I credit Lieutenant Robert Shea's testimony that he was not involved in removing Mr. Wigfall from his cell. I similarly credit Captain Dewey's testimony that, as director of security, he would not play a role in removing a prisoner from his cell and hence was not involved in Mr. Wigfall's extraction. Mr. Wigfall himself testified that none of the three defendants were

involved in slamming his face into the ground. I find more broadly that, after Sergeant Marshall sprayed the chemical agent, the three defendants were no longer engaged with Mr. Wigfall.

In any event, Mr. Wigfall contends someone he cannot identify put leg shackles onto him and walked him to the medical station. He testified that the officers escorting him pulled him by his handcuffs and on cross-examination stated they partially "dragg[ed]" him to the medical station while unnecessarily parading him in a state of undress in front of various staff members. I find this testimony overstated.

Mr. Wigfall testified that a medic checked him right after the incident, but did not loosen the handcuffs, which he testified were causing significant swelling of his wrists. Mr. Wigfall stated that his shackles and cuffs were not removed, nor was he given clothing or a shower to remove the contaminant, until much later. On cross-examination, however, he conceded that his eyes were cleaned. And medical records dated February 12, 1999 state that no meaningful wrist swelling was observed; if such swelling had been severe, it would have lasted into the following day and the condition would have been noted in medical records, but it was not.

**III.**

Section 1983 provides a civil cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Broadly stated, Mr. Wigfall contended that the defendants violated his Eighth Amendment right when they used a chemical agent and removed him from his cell on February 11, 1999.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Staples* v. *Gerry*, 923 F.3d 7, 13 (1st Cir. 2019)(quoting *Wright* v. *Goord*, 554 F.3d 255, 268 (2d Cir. 2009)). The standard can vary based on the type of Eighth Amendment violation alleged. *Wilson* v. *Seiter*, 501 U.S. 294, 302 (1991) (comparing subjective intent in excessive force and conditions of confinement matters). Here, Mr. Wigfall submits two theories for a violation of the Eighth Amendment: (1) excessive force and (2) deliberate indifference to his serious medical needs.

**A.   *Excessive Force***

When a plaintiff alleges that prison officials used excessive force, the objective prong requires that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," *Hudson* v. *McMillian*, 503 U.S. 1, 8

(1992) (quoting *Wilson*, 501 U.S. at 303), "in light of 'contemporary standards of decency,'" *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8). "The subjective prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Staples*, 923 F.3d at 13 (quoting *Whitley* v. *Albers*, 475 U.S. 312, 320-21 (1986)).

As I have found, there is no credible evidence that any of the three defendants, other than Sergeant Marshall, used force. None of those defendants were involved in moving Mr. Wigfall, and only Sergeant Marshall sprayed the chemical agent. Accordingly, for purposes of the findings and conclusions, I need only determine whether the force Sergeant Marshall used when he sprayed the chemical agent offends the Eighth Amendment.

In drawing my conclusions, I observe that the use of a chemical agent is not "per se unconstitutional." *Staples*, 923 F.3d at 17 (quoting *Williams* v. *Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)). I must consider all "of the circumstances, including the provocation, the amount of [spray] used, and the purposes for which the [spray] is used [to] determin[e] the validity of the use of [spray] in the prison environment." *Id.* (alterations in original) (quoting *Williams*, 77 F.3d at 763) (describing considerations in summary judgment context).

Here, Sergeant Marshall, who was engaged in a shakedown of a newly commissioned facility populated with inmates from diverse other facilities and confronted by a recalcitrant and belligerent prisoner, used a minimal amount of chemical agent to induce Mr. Wigfall to exit his cell. *Cf. Skinner* v. *Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005)(no constitutional violation where, *inter alia*, "the extraction team sprayed a non-lethal chemical irritant (derived from cayenne pepper) into the cell to make [plaintiff] exit the cell without direct physical force"). Sergeant Marshall used the chemical agent only after Mr. Wigfall refused to comply with prison procedures and Deputy Commissioner Duval approved the use of force. *Cf. Burns* v. *Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (affirming grant of summary judgment to prison officials where officer warned prisoner that he would use pepper-spray if he failed to "catch the cuffs," the prisoner did not comply, and "small amount[s] of paper spray" were used).

Moreover, this is not a case where there was "no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force," *id*, such that there is a "reasonable inference that the officers acted maliciously in an effort to cause harm," *id.* (citation omitted) (describing cases where summary judgment to

10

defendants may not be appropriate in chemical agent use of force cases). The facts, as I have found them from the bench trial, do not permit me to conclude that Sergeant Marshall applied the chemical agent "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (citation omitted). Because Mr. Wigfall has failed to establish that the defendants had the subjective intent required, he has not proven by a preponderance of the evidence that his Eighth Amendment right was violated by Sergeant Marshall's use of force.

**B.   *Deliberate Indifference to Serious Medical Needs***

"Prison officials must provide 'humane conditions of confinement,' including adequate medical care." *Leite* v. *Bergeron*, 911 F.3d 47, 52 (1st Cir. 2018)(quoting *Farmer* v. *Brennan*, 511 U.S. 825, 832 (1994)). However, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9. To satisfy the objective prong of this claim, a plaintiff must "prove that [he] has a medical need 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Zingg* v. *Groblewski*, 907 F.3d 630, 635 (1st Cir. 2018) (quoting *Kosilek* v. *Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc)). Care need not be "ideal, or of the prisoner's choosing." *Kosilek*, 774 F.3d at

11

82.  The Constitution only protects against care "so inadequate as to shock the conscience."  *Sires* v. *Berman*, 834 F.2d 9, 13 (1st Cir. 1987).

"[E]ven if medical care is so inadequate as to satisfy the objective prong," plaintiff must also demonstrate "deliberate indifference to [his] needs."  *Kosilek*, 774 F.3d at 83.  Deliberate indifference requires a showing stronger than negligence; it "has been likened to the standard for determining criminal recklessness."  *Leite*, 911 F.3d at 53 (quoting *Giroux* v. *Somerset Cty.*, 178 F.3d 28, 32 (1st Cir. 1999)).  "[T]he plaintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm."  *Zingg*, 907 F.3d at 635 (citation omitted).  There may be "overlap" in the subjective and objective inquiries; "[s]imilar evidence, including evidence of adverse effects, may be relevant to both components."  *Leavitt* v. *Corr. Med. Servs., Inc.*, 645 F.3d 484, 498 (1st Cir. 2011) (alteration in original) (quoting *Smith v. Carpenter,* 316 F.3d 178, 187 n. 12 (2d Cir. 2003)).

Although *pro se* litigants are afforded "a liberal reading" of pleadings, *F.H. Cann & Assocs., Inc.* v. *Moorman*, 605 F. Supp. 3d 232, 238 (D. Mass. 2022) (citation omitted), and I have considered the evidence submitted by the *pro se* plaintiff here in a liberal fashion, I cannot "put flesh on the bare bones of

an underdeveloped argument," *id.* (citation omitted), particularly when weighing impartially the evidence as it has been finally received at trial. The contours of the deliberate indifference theory are challenging to define under these circumstances where Mr. Wigfall himself testified that immediately after Sergeant Marshall sprayed him with a chemical agent, he was brought to a medical station for attention. Moreover, I have found that the remaining defendants played no role after Mr. Wigfall was removed from his cell.

It appears that Mr. Wigfall claims his medical care was cut short. His claims cannot be squared with the record. As a preliminary matter, Mr. Wigfall has not proven, by a preponderance of the evidence, that he has met either prong of the deliberate indifference inquiry. There is no credible evidence documenting a serious physical injury; Mr. Wigfall testified that he was taken to the medical station after the incident, and a medical report from February 12, 1999 suggests that the nurse did not observe any wrist swelling. However, from all that appears, prison officials "responded reasonably to the risk[s]" presented by Mr. Wigfall's injuries. *Kosilek*, 774 F.3d at 84 (quoting *Giroux*, 178 F.3d at 33). And a closer examination of the record suggests Mr. Wigfall was not fully forthcoming or compliant with medical advice.

Mr. Wigfall's claim of deliberate indifference faces another hurdle; he has not proven by a preponderance of the evidence that any of the remaining three defendants in the bench trial were involved after the chemical agent was used or ignored their duty to obtain medical care for him.  Indeed, on these independent grounds more fully developed at trial, it is evident Mr. Wigfall could not meet his burden with respect to establishing deliberate indifference by any defendant.

**IV.**

While this case was under advisement, Mr. Wigfall was released from custody but thereafter passed away.  Mr. Wigfall's daughter, Angelique Wigfall, came forward *pro se* purporting to be the legal representative "for [her] father's case" and filed an Application to Proceed *in forma pauperis*.  I alerted Ms. Wigfall that she may not herself proceed *pro se* or *in forma pauperis* in this matter.

In an effort to formalize the precise basis for her status, at my direction, procedural instructions were provided by my then Deputy Clerk, Jarrett Lovett.  Members of Mr. Wigfall's family submitted his death certificate under seal [Dkt. No. 194] as relevant to Mr. Wigfall's incapacity to pursue or defend this litigation.  On October 27, 2015, Ms. Wigfall then filed her Letters of Authority for Personal Representative [Dkt. No. 199], showing that she had been appointed and qualified as Personal

Representative in her father's estate by the Plymouth Probate and Family Court [*id.*]. Thereafter, I issued a Notice of Impending Disposition [Dkt. No. 202], observing that despite Ms. Wigfall's personal representative notice, no attorney had filed a notice of appearance on behalf of the estate [*Id.*]. Ms. Wigfall, nevertheless, continued to proffer herself *pro se* as what she characterized as the legal representative for her father's case. To date, no attorney has entered an appearance in this matter.

The Local Rules of this court state that an "estate, or other entity that is not an individual may not appear *pro se*." L.R. 83.5.5(c). Ms. Wigfall has undertaken to represent her father's estate *pro se*, without strict compliance with the Local Rule, and the pertinent federal law, 28 U.S.C. § 1654, which states that parties may only "plead and conduct *their own* cases personally or by counsel" (emphasis added).

District court case law in this Circuit has recognized an exception to the rule: where a personal representative is the "sole beneficiary of an estate with no creditors," she may represent the estate *pro se*. *Bourne* v. *Gardner*, 468 F. Supp. 3d 426, 427 (D. Mass. 2020). The First Circuit itself has apparently not weighed in on this issue, however, other Circuits have applied this exception. *See, e.g., Rodgers* v. *Lancaster Police & Fire Dep't*, 819 F.3d 205, 211 (5th Cir. 2016) ("A

15

person with capacity under state law to represent an estate in a survival action may proceed *pro se* if that person is the only beneficiary and the estate has no creditors."); *Guest* v. *Hansen*, 603 F.3d 15, 17 (2d Cir. 2010) (same).

As an initial matter, it appears that Ms. Wigfall has not established she is the sole beneficiary of her father's estate. I am informed that she has appeared in the Clerk's Office from time to time with her mother to inquire regarding the status of this case. Her mother is likely a beneficiary separately. Moreover, it has also come to my attention that MassHealth has filed a Notice of Claim in Mr. Wigfall's estate. *In re Wigfall*, No. PL15P1967EA, Dkt. No. 8 (Mass. Prob. Ct. Jan. 11, 2016). Accordingly, Mr. Wigfall's estate has at least one creditor, independently foreclosing the possibility of applying the exception.

To bring this case to conclusion after fair notice to Ms. Wigfall regarding her rights and responsibilities, I now hereby DENY her application [Dkt. No. 203] to proceed *pro se* and *in forma pauperis*. *See Nickerson* v. *Champion Mortg. Co. LLC*, No. 19-10401-NMG, 2019 WL 3546479, at *1 (D. Mass. Mar. 11, 2019) ("[B]ecause an estate is not a natural person, it cannot proceed *in forma pauperis* under 28 U.S.C. § 1915."). Should she desire to appeal this decision, it appears she will need to do so with the assistance of counsel in the Court of Appeals.

I had dismissed Mr. Wigfall's claims as to other defendants on March 29, 2002, noting that "the remaining defendants do not appear to have been specifically alleged as being directly involved in the incident." [Dkt. No. 69]. After the bench trial, Mr. Wigfall moved [Dkt. No. 174] to reinstate defendant Ronald Duval, contending that the evidence at trial demonstrated he had given the order to use force on February 11, 1999. I denied Mr. Wigfall's motion by electronic order on September 22, 2009, and briefly summarize my reasoning here to put in perspective the travel of the case.

Fed. R. Civ. P. 15(b)(2), which permits a party "to amend [its] pleadings to conform them to the evidence" when "an issue not raised by the pleadings is tried by the parties' express or implied consent" does not apply. There is no evidence that Mr. Duval was put on notice prior to testifying that Mr. Wigfall intended to raise new claims against him, and "[i]t is not enough that an issue may be inferentially suggested by incidental evidence in the record; the record must demonstrate that the parties understood that the evidence was aimed at an unpleaded issue." *In re Fustolo*, 896 F.3d 76, 84 (1st Cir. 2018) (alteration in original) (quoting *Galindo* v. *Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986)). In any event, if Mr. Wigfall had been able to bring a supervisory liability claim against Mr. Duval, he would fail on the merits — such a claim

17

requires an underlying constitutional violation.  *See Perry* v. *Dickhaut*, 125 F. Supp. 3d 285, 299 (D. Mass. 2015).  I find that Mr. Wigfall has not proven by a preponderance of the evidence that his constitutional rights were violated.

Ms. Wigfall's application to proceed *pro se*, independently and *in forma pauperis* is DENIED.

## V. CONCLUSION

Mr. Wigfall failed to prove by a preponderance of the evidence alleged or proven in an evidentiary hearing that any of the defendants violated his Eighth Amendment right.  Accordingly, it is hereby ORDERED that judgment enter for defendants.

> */s/ Douglas P. Woodlock*
> DOUGLAS P. WOODLOCK
> United States District Judge